UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:05-CR-58-DCR |
| v. | ) | No. 6:08-CV-07023-DCR |
| | ) | |
| GERALD WAYNE COLLIER, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Movant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On June 30, 2008, Movant Gerald Wayne Collier filed a *pro se* motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. (D.E. 82). The United States filed a response to Movant's motion on September 10, 2008 (D.E. 91), and Movant filed a reply on December 19, 2008. (D.E. 97). Pursuant to local practice, the matter was referred to the undersigned for a recommended disposition. 28 U.S.C. § 636(b). Having reviewed the matter thoroughly, the Court **RECOMMENDS** that the motion be **DENIED**.

## I. BACKGROUND

On June 1, 2005, law enforcement officers responded to an anonymous complaint of a methamphetamine manufacturing operation in London, Kentucky. *United States v. Collier*, 246 F. App'x 321, 324 (6th Cir. 2007). At the scene, law enforcement officers encountered Movant, who fled but was ultimately apprehended after being pursued on foot. *Id.* The officers recovered a "large quantity" of methamphetamine found in a black box in Movant's car, and a "small" quantity on his person. *Id.* On July 28, 2005, a grand jury indicted Movant on one count of

possession with intent to distribute five grams or more of methamphetamine. (D.E. 8). A two-day trial followed, during which Movant was represented by Bruce R. Bentley, who was appointed under the Criminal Justice Act. (*See* D.E. 16).

Beverly Wagoner, a drug analyst for the Kentucky State Police crime lab, testified that the bags recovered from the black box in Movant's vehicle contained 55.797 grams of 82 percent pure methamphetamine. She further testified that bags recovered from Movant's person contained 2.605 grams of a mixture of methamphetamine and the cutting agent dimethyl sulfone, for a total of 1.641 grams of pure methamphetamine. *Collier*, 246 F. App'x at 325. DEA Agent David Gray also testified. Having qualified to testify as an expert concerning standard dosage and average intoxication rates, Agent Gray opined that possession of crystal methamphetamine along with dimethyl sulfone is consistent with possession with intent to distribute, that the absence of any paraphernalia for using methamphetamine also suggested the drugs were intended for resale rather than personal use, and that 55.79 grams of methamphetamine could, if mixed with 55 grams of a cutting agent like dimethyl sulfone, sell for as much as $10,000. *Id.*

Movant's trial strategy was to show that he possessed the drugs on his person for personal use rather than for distribution, that the drugs in the black box recovered from his car were not his, and that he did not know of their existence. Movant testified, which testimony the Sixth Circuit summarized as follows:

> Defendant stated that he went to his uncle Glen Collier's house on June 1, 2005 to push a lawn mower into Glen Collier's barn for storage. Defendant admitted running from the police, and that the officers found money and drugs on his person, but said that those drugs were for personal use. Defendant denied ownership of the black box recovered from his car, and disclaimed all knowledge of the box. Defendant testified that the $1,900 was part of an inheritance from his father. Defendant denied distributing or selling methamphetamine that day.
> On cross-examination, Defendant asserted that he used dimethyl sulfone to stretch out his methamphetamine for personal use "because [he's] not rich." He

2

> testified that he planned to use the $1,900 in his pocket to pay bills that day because it was the first of the month. Defendant indicated that he began to run when the officers approached because he perceived the officer's Escalade to be an escalator. Later, Defendant stated it was because he had drugs in his pocket. Still later, Defendant explained, "Every time I see the police, I run." Lastly, Defendant admitted to a previous felony conviction for selling methamphetamine.

*Id.* at 326-27 (internal citations omitted).

On October 5, 2005, the jury returned a verdict of guilty after 29 minutes of deliberation. (D.E. 74 at p. 159-61). The jury specifically found that Movant possessed with intent to distribute 59.165 grams of a mixture or substance containing a detectable amount of methamphetamine and 47.398 grams of actual methamphetamine.[1] (*Id.*). On January, 26, 2005, Bruce Bentley filed a motion to withdraw as counsel for Movant. (D.E. 49). The Court granted the motion and appointed Brandon J. Storm to represent Movant at sentencing. On March 7, 2006, Movant was sentenced to 480 months imprisonment and 8 years supervised release. (D.E. 61).

Movant appealed his conviction to the Sixth Circuit Court of Appeals, during which he was represented by Robert L. Vogel. The Court of Appeals denied all claims of error and affirmed Movant's conviction. *Collier*, 246 F. App'x at 324. The Court of Appeals described the evidence of knowing possession as follows:

> testimony at trial establishes that Defendant actually possessed methamphetamine, a Schedule II controlled substance, on his person. Additionally, the record shows Defendant constructively possessed the methamphetamine recovered from his car inasmuch as Defendant stood next to the driver's seat directly adjacent to the black box just prior to the chase, and Officer Reams secured the vehicle until it could be searched. The crime lab drug analyst, Wagoner, testified that the black box in Defendant's car and the bags in

---

[1] The Court notes, as did the Court of Appeals, that the jury returned a special verdict finding Movant guilty of possessing 59.165 grams of a mixture containing methamphetamine, a figure which was "slightly inaccurate" with regard to precise weight of the mixture, but that error does not bear on the merits of Movant's motion.

3

> his pocket contained methamphetamine. Finally, the district court accepted the
> methamphetamine into evidence.
>
> . . . .
>
> . . . a rational jury could conclude that Defendant knowingly possessed the
> methamphetamine. Defendant stood next to the driver's seat of his car when the
> police approached and ran immediately upon making eye contact with Officer
> Reams. During the later search of his vehicle, Officer Reams recovered the black
> box of methamphetamine from the floor in front of the driver's seat. Further,
> from the time Defendant ran until the officers searched his vehicle, Officer Reams
> insured that no other person present at the scene had access to the vehicle.

*Collier*, 246 F. App'x at 329-30 (citations omitted).

Moreover, the Court of Appeals described the circumstantial evidence supporting intent to distribute as "overwhelming," and detailed that evidence as follows:

> Wagoner testified that the methamphetamine recovered from the black
> box in Defendant's car tested 82 percent pure, as compared to the 63 percent pure
> methamphetamine found in his pocket. One of the bags found on Defendant's
> person contained a mixture of methamphetamine and a cutting agent, dimethyl
> sulfone, a fact which DEA Agent Gray found consistent with "possession with
> intent to distribute, because of the cutting agent." As Gray put it, "there's no
> reason to have a cutting agent unless you were attempting to make more
> methamphetamine." Agent Gray estimated the street value of the
> methamphetamine Defendant possessed at approximately $5,000, but noted the
> street value would rise to $10,000 if Defendant mixed the methamphetamine with
> equal parts of a cutting agent.
> Moreover, the officers recovered $1,900 from Defendant's pocket, which
> further supports a finding that Defendant was actively engaged in the sale of
> methamphetamine. The evidence militates against a finding that Defendant
> merely possessed the methamphetamine for personal use. First, Defendant
> possessed a rather large quantity of methamphetamine, taking together the drugs
> recovered from his pocket and his car. Second, testimony proffered by Officer
> Reams and Deputy Sheriff Zanet establishes that Defendant had no use
> paraphernalia in his car or on his person. At trial, Gray expressed his opinion that
> possession of "just methamphetamine . . . and the tools to use the
> methamphetamine" would be consistent with possession for personal use, but that
> absence of any paraphernalia suggests the methamphetamine is intended for
> resale. Finally, Defendant admitted on cross-examination to previous felony
> convictions for selling methamphetamine.

4

*Id.* at 329-30 (citations omitted). On June 30, 2008, Movant filed the motion currently before the Court, claiming ineffective assistance of counsel.

## II. ANALYSIS

To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (a petitioner must prove ineffective assistance of counsel by a preponderance of evidence). To prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. 687. Thus, under the standard set out in Strickland, the question becomes whether the petitioner can demonstrate that his attorney's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-89. Further, scrutiny of counsel is "highly deferential," and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. Deficient performance is constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

To prove prejudice, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 694. Finally, when evaluating claims of prejudice, courts will consider the totality of the evidence presented in the proceeding. *Id.* at 695. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. "If it is easier to dispose of an ineffectiveness

5

clam on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* Movant identifies six grounds of purported ineffective assistance on the part of both trial and appellate counsel, each of which the Court addresses herein.

### A. Erroneous Legal Advice Regarding Cross-examination

Movant's first claim of ineffective assistance is that trial counsel erroneously advised Movant that, if he testified, "the government would not be able to inquire of [his] prior conviction for trafficking in . . . methamphetamine while on the stand." (D.E. 82 at 5). Defense counsel "opened the door for the government to inquire of said prior conviction by using an alibi defense that placed [Movant] in jail." (*Id.*). Movant states, "Had I known that my being put on the stand would have opened the door for the government to prejudicially bring in the fact of my past prior conviction for selling methamphetamine, I would not have taken the stand in my defense."

The United States responds that this alleged error was a defense strategy upon which counsel and Movant had agreed prior to trial. (D.E. 91 at 3). Trial counsel has filed an affidavit in which he declares that he did discuss with Movant the potential for cross-examination regarding prior bad acts or previous convictions, but that, "it was more important to establish to the jury that [Movant] was not guilty of the crime charged by demonstrating it was impossible for [Movant] to have made any arrangements to distribute methamphetamine." (D.E. 91-2 at 1).

Despite Movant's argument that he received incorrect legal advice, he cannot demonstrate that prejudice resulted from taking the stand and testifying on his own behalf. The Sixth Circuit described many aspects of the evidence of Movant's guilt as "overwhelming." *Collier*, 246 F. App'x at 329-30. This evidence included testimony that, at the time of his arrest, Movant possessed on his person a large amount of cash and a small amount of

methamphetamine, and constructively possessed in his vehicle a large amount of methamphetamine. *Id.* Furthermore, expert testimony was introduced which suggested that, based on the quantity of drugs and money and the lack of paraphernalia for using the drugs, the methamphetamine was intended for resale. *Id.* Thus, even setting aside Movant's testimony on cross-examination about his previous conviction for selling methamphetamine, ample evidence of Movant's guilt was presented to the jury. So, even assuming that Movant had been advised of the possible questioning on cross concerning his prior conviction and he had decided not to take the stand,[2] given the totality of the evidence otherwise presented to the jury, Movant has not demonstrated the result of the trial would have been different.

Moreover, the Court's instruction to the jury regarding Movant's criminal history further attenuated any prejudice as to Defendant's prior conviction:

> You have heard testimony that the defendant committed some other acts -- some acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now. Instead, you can only consider it in determining his credibility as a witness. Do not consider it for any other purpose. Remember that the defendant is on trial here only for the crime of possession with the intent to distribute methamphetamine on or about June 1st, as charged in the indictment, and not for any other acts.

(D.E. 74 at 119). The Court does not assume that the jury disregarded the admonition. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency,[3] that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Therefore an "assessment

---

[2] The Court makes this assumption solely for purposes of the analysis herein. Although Movant's version of the advice rendered differs from Mr. Bentley's version, the Court need not resolve any factual issue concerning that advice because Movant's claim is readily disposed of based purely on a lack of prejudice. *Strickland*, 466 U.S. at 697.

[3] The Sixth Circuit rejected such a challenge when Movant directly appealed his conviction. *See Collier*, 264 F. App'x at 329-30.

7

of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695; *see also Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987) (reversing appellate court's decision to grant a writ of habeas corpus for an alleged violation of the Confrontation Clause of the Sixth Amendment, and noting "the almost invariable assumption of the law" that jurors follow their instructions).

The Court therefore finds that Movant has failed to demonstrate a reasonable probability exists that, but for this alleged error, the result of the proceeding would have been different. His claim of ineffective assistance as to this ground therefore fails.

### B. Failure to Interview and Subpoena Witnesses.

Movant's second claim of ineffective assistance focuses on counsel's alleged failure "to interview and subpoena necessary defense witnesses in which to demonstrate that the proceeds – i.e. the $1,906 seized from [Movant] subsequent to his arrest on June 1, 2005, was accrued from legitimate means." (D.E. 82 at 8). The officers found $1,906 on Movant's person at the time of his arrest. The expert witness for the prosecution, DEA Agent David Gray, testified that the amount of money was "another indication . . . that [Movant] was selling methamphetamine and not using it." (D.E. 74 at 24). Movant's testimony at trial was that the money came from his share of a certificate of deposit left by his late father, and that he had planned to pay bills with the money. (*Id.* at 46). Movant claims he "provided counsel with reliable alibi witnesses" who could have corroborated that testimony. (*Id.*).

Mr. Bentley tried to enter into evidence a document written by a BB&T bank employee stating that a certificate of deposit had been redeemed in March 2005 in the amount of $5,052.52, and paid over to Bobbie McKnight, Movant's mother. (*See* D.E. 73 at 174). Mr.

8

Bentley argued the document was "self-authenticating," but the district court disagreed, finding that the document was not admissible without the testimony of the bank employee who wrote it, a Ms. Perkins. (*See* D.E. 74 at 3). Movant argues counsel should have "interviewed/subpoenaed" Ms. Perkins, or Movant's mother, Bobbie McKnight, to testify that Movant's mother had, in fact, redeemed the CD: "Simply put, had evidence been presented that the $1,906 may have been proceeds obtained from a legitimate source, the jurors may have elected to find [Movant] not guilty as charged." (*Id.*).

Movant's second claim of ineffective assistance of counsel fails for lack of prejudice because, even if events unfolded as he describes them,[4] Movant has not met his burden to show that the result of the trial would have been different. When a defendant claims that his attorney failed to call a witness at trial, he must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [the] defense." *Talley v. United States,* No. 1:00-cv-74, 2006 WL 3422997, at *10 (E.D. Tenn. Nov. 27, 2006); *see also United States v. Ashimi,* 932 F.2d 643, 650 (7th Cir. 1991) ("Under whatever framework, however, evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). Having failed to present such affidavits, the Court cannot make any real assessment of how any testimony from the purported alibi witnesses would have affected the

---

[4] Bruce R. Bentley states in his affidavit that he did not subpoena Ms. McKnight or Ms. Perkins because Movant "specifically advised counsel not to subpoena [them] and that he did not want them called as witnesses prior to trial." (D.E. 91-2 at 2).

outcome of his trial. Thus, Defendant's assertion that his attorney was ineffective for failing to call these putative witnesses at trial is without merit.

**C. Deficient Performance Concerning Lesser Included Offense Instruction.**

Movant claims that trial counsel was ineffective because he provided "erroneous" legal advice, which caused Movant to instruct trial counsel not to request a jury instruction on the lesser included offense of simple possession.[5] (*See* D.E. 82 at 12). Movant claims that trial counsel told him he would be subject to a career offender enhancement under the Sentencing Guidelines regardless of whether he was convicted of possession with intent to distribute or convicted of simple possession, which is untrue.

If several conditions are met, the career offender enhancement increases the guideline range. *See* U.S. Sentencing Guidelines Manual § 4B1.1(a) (2005).[6] The career offender enhancement requires that "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense." *Id.* The Sentencing Guidelines define a "controlled substance offense" as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance," or the possession of a controlled substance with intent to do the same. *Id*. at § 4B1.2. Possession with intent to distribute is therefore a "controlled substance offense," and thus a predicate offense for the career offender enhancement, while

---

[5] The Sixth Circuit Court of Appeals ruled that the district court did not abuse its discretion by failing to *sua sponte* instruct the jury on the lesser included offense of simple possession, holding that "Without a proper request for an instruction on possession – and certainly where Defendant's counsel requested the instruction, the district court intended to so instruct the jury, and Defendant subsequently expressly withdrew the request – we need not consider whether a rational jury could have found, on alternate instructions rejected by Defendant, that Defendant possessed the methamphetamine for personal use, and not for distribution." *Collier*, 246 F. App'x at 328-29.

[6] The relevant portion of the Sentencing Guidelines has not changed since Movant was sentenced on March 7, 2006.

10

simple possession is not. Hence a conviction for simple possession does not expose a defendant to enhanced punishment as a career offender.

During the charge conference, trial counsel argued that Movant was entitled to a jury instruction on the lesser included offense of possession, and the following exchange occurred:

> [DEFENSE COUNSEL]: . . . I believe that there has been sufficient testimony that this could be only a possession case, a finding of possession against [Defendant]. . . .
>
> THE COURT: Lesser included offense?
>
> [DEFENSE COUNSEL]: Lesser included offense. That's what I'm getting at. So if there is one available, I believe lesser included would be appropriate.
>
> THE COURT: Mr. West [the prosecutor]?
>
> [PROSECUTOR]: He's entitled to it, your Honor.
>
> THE COURT: Do the parties want to draft the special verdict form on that issue? Let's talk. What would be your position with respect to the verdict form that the jury would submit, if they answer not guilty as to the special verdict form that's currently attached? The question would be - I would need to expand the first sentence: "We, the jury, find [Defendant] guilty of the offense of possession with intent to distribute," essentially the language used in the indictment.
>
> "If you find not guilty, then proceed to special Instruction No. 2." Special Instruction No. 2 would read: "We, the jury, find [Defendant] guilty of possession."
>
> [DEFENSE COUNSEL]: Yes, sir.

*Collier*, 246 F. App'x at 327. Thus, the prosecution had agreed to allow the instruction, and the Court called a brief recess to locate the appropriate Sixth Circuit Pattern Jury Instruction.

After that recess, however, Movant personally withdrew his request for a jury instruction on the lesser included offense of possession of methamphetamine:

| | |
|---|---|
| [DEFENSE COUNSEL]: | . . . Before the recess we discussed the issue of lesser included offense. I discussed that with Mr. Collier, and he has instructed me not to request the lesser included. |
| THE COURT: | I got that message. Mr. Collier, that is your request at this time? |
| THE DEFENDANT: | As far as I can gather from my knowledge of the law, yes. |
| THE COURT: | And your discussions with counsel; is that correct? And you have also had a chance to take [sic] to your attorney about that? |
| THE DEFENDANT: | Yes. He advised me against it. |
| THE COURT: | You don't have to tell me about the advice, I just wanted to make sure you discussed it with him. |

*Id.*

Movant states in his § 2255 motion that trial counsel advised him ***not*** to waive the jury instruction on the lesser included offense of simple possession, advice that Movant did not heed. (D.E. 82 at 13). Movant states, however, that his attorney gave that advice "on the basis of the guideline difference," and not because of an analysis of Movant's potential for exposure to a career offender enhancement.[7] (*Id.*). Movant therefore complains that his attorney rendered incorrect legal advice, causing him to not realize a conviction on the lesser included offense

---

[7] Bruce R. Bentley states in his affidavit that he "specifically advised [Movant] as to his potential sentence as a career offender and also the effect the (sic) conviction for possession of methamphetamine with intent to distribute versus simple possession. In fact, counsel requested lessor (sic) included offense instruction for simple possession at trial." (D.E. 91-2 at 2).

12

could not result in a career offender enhancement, and he therefore withdrew the request for the lesser included offense instruction.

Despite Movant's argument, he fails to demonstrate that prejudice resulted from withdrawing the request for a lesser included offense instruction. "The requirement that a lesser-included-offense instruction be given stems from the need to give the jury a 'third option' where it would otherwise be presented with an all-or-nothing choice." *United States v. Valencia*, 188 F. App'x 395, 402 (6th Cir. 2006) (quoting *Schad v. Arizona*, 501 U.S. 624, 646-47 (1991)). Although a court errs by failing to give a lesser included offense instruction that is properly requested, *see United States v. Monger*, 185 F.3d 574 (6th Cir. 1999), a movant alleging ineffective assistance for failure to request such an instruction must still demonstrate that prejudice resulted from the absence of the instruction. *See United States v. Jansen*, 218 F.Supp. 2d 659, 670 (M.D. Pa. 2002) ("While we make no judgment on the reasonableness of counsel's performance, Jansen's claim fails because he has not demonstrated prejudice."), *rev'd on other grounds*, 369 F.3d 237 (3d Cir. 2004). Movant must show that a reasonable probability exists that, but for his counsel's allegedly unprofessional errors, the results of the proceeding would have been different. *Strickland,* 466 U.S. at 694; *Johnson v. Bell,* 525 F.3d 466, 486-87 (6th Cir. 2008). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

In *Jansen*, the movant brought a § 2255 motion to vacate his sentence for possession with intent to distribute which alleged, among other grounds, that trial counsel was ineffective for not requesting the lesser included offense of simple possession. *Jansen*, 369 F.3d at 669. The Court held that Jansen was not entitled to relief because he could not show "a reasonable probability that, assuming counsel erred, the result of the proceeding would have been different." *Id.* at 670.

On the contrary, "the evidence of the more serious crime was just too great." *Id.* Several courts have reached this conclusion. *See Bell v. McNeil*, 353 F. App'x 281, 286 (11th Cir. 2009) ("even if the state trial court had agreed to give the [lesser included offense] instruction, Bell has not shown that the jury probably would have convicted him of [it] rather than [the more serious crime].") (citation omitted); *O'Rourke v. Endell*, 153 F.3d 560, 574 (8th Cir. 1998) (no prejudice was caused by counsel's failure to request lesser included offense instruction, in part because "there could be no reasonable doubt that all of the elements of the [crimes charged] on which the jury was instructed were proved, and by overwhelming evidence as is apparent from the jury's speedy deliberations.").

Here, Movant's argument suffers from this same fatal defect. The Sixth Circuit observed that the evidence against Movant of intent to distribute was "overwhelming." *Collier*, 246 F. App'x at 329-30; *see also Jansen*, 369 F.3d at 670 (holding that Defendant could not show prejudice on his ineffectiveness claim because "[t]he evidence in support of both [Defendant's] intent to distribute and his distribution was overwhelming."). That evidence is detailed above, and needs no further examination. In light of this overwhelming evidence of intent to distribute, Movant fails to show any probability that the lesser include offense instruction would have resulted in a different outcome. Having failed to undermine the Court's confidence in the outcome that did result, his claim fails.

### D. Failing to Move to Suppress Evidence from Movant's Vehicle

Movant also claims counsel was ineffective for failing to "prepare and submit a timely pretrial motion to suppress evidence allegedly seized from the floorboard of [Movant's] vehicle subsequent to [Movant's] arrest on June 1, 2005, for possession of methamphetamines." (D.E. 82 at 15). Movant "may assert a Sixth Amendment claim based on his counsel's failure to move

for the suppression of evidence that should be excluded under the Fourth Amendment." *Northrop v. Trippett*, 265 F.3d 372, 378 (6th Cir. 2001) (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)). To succeed on this type of claim, however, Movant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman*, 477 U.S. at 375. But "[a] lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law." *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

Movant's argument fails because the Fourth Amendment argument he contends trial counsel mishandled was not meritorious. Because a motion to suppress evidence from the search of Movant's vehicle would have been futile, counsel was not required to make such a motion. *See Holmes v. United States*, 281 F. Appx. 475, 482 (6th Cir. 2008) ("Trial counsel was not ineffective for failing to file a motion to suppress that would have been meritless."). The officers' search of Movant's vehicle did not offend the Fourth Amendment because they undoubtedly had probable cause to search it.

"Where a law enforcement agent has no warrant to search an automobile, he may still conduct a search pursuant to the 'automobile exception' if he has probable cause to believe that instrumentalities or evidence of crime may be found in the vehicle to be searched." *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001) (quoting *United States v. Lumpkin,* 159 F.3d 983, 986 (6th Cir. 1998)); *see also Pennsylvania v. Labron,* 518 U.S. 938, 940 (1996) ("[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."). The Sixth Circuit has defined probable cause as "reasonable grounds for belief, supported by less than prima facie

proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). Thus, the search was permissible if the officers had reasonable grounds to believe that "instrumentalities or evidence of crime" would be found in Movant's vehicle. *Graham*, 275 F.3d at 509.

Here, the officers would certainly have had probable cause to believe that Movant's vehicle contained contraband. The officers were on the scene to investigate an anonymous complaint of methamphetamine manufacturing. *Collier*, 246 F. App'x at 324. When the officers arrived, Movant stood next to the driver's side door of his vehicle, which was open; the vehicle's trunk was open as well. (D.E. 73 at 29). Movant "ran immediately upon making eye contact with Officer Reams." *Collier*, 246 F. App'x at 329. When apprehended, Movant was found to possess a large amount of cash and roughly 2.6 grams of methamphetamine on his person. Reasonable grounds therefore existed to believe that instrumentalities or evidence of crime could be found in Movant's vehicle, and therefore the warrantless search of Movant's vehicle was valid.

Because Movant has not demonstrated that his Fourth Amendment argument has any merit whatsoever, this claim of ineffective assistance of counsel fails.

### E. Failing to Appeal the District Court's Decision to Re-read Testimony

"A defendant is entitled to effective assistance of counsel in connection with a defendant's first appeal of right." *Evitts v. Lucey,* 469 U.S. 387, 396 (1985). Appellate counsel need not, however, "raise every non-frivolous argument on direct appeal." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (citing *Jones v. Barnes,* 463 U.S. 745, 751-52 (1983)). On the contrary, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate

advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones,* 463 U.S. at 751-52). Although appellate counsel must exercise reasonable professional judgment, *Jones,* 463 U.S. at 753, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986); *see also Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002).

Movant alleges that appellate counsel rendered ineffective assistance by not arguing on appeal that the district court erred by granting the jury's request to have one police officer's testimony re-read to them by the court reporter. At trial, defense counsel timely objected, arguing that "to allow [the jury] to hear one witness's testimony over again outside of the context of all the other witnesses . . . would be inappropriate." (D.E. 74 at 130). The issue was thus preserved for appeal, but the standard of review is deferential; the Sixth Circuit Court of Appeals reviews a trial court's decision to re-read one witness's testimony for an abuse of discretion. *See United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986).

To demonstrate prejudice in the context of ineffective assistance of appellate counsel, Movant must show that a reasonable probability exists that, but for appellate counsel's deficient performance, he would have prevailed on appeal. *See Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004). In *Padin*, the Sixth Circuit acknowledged the concerns that a district court's decision to re-read one witness' testimony could lead a jury to accord undue emphasis to the testimony, or to take the re-read testimony out of context. *See Padin*, 787 F.2d at 1076. The Court also cited *Henry v. United States*, 204 F.2d 817 (6th Cir. 1953), for the proposition that "these concerns are escalated" after a jury reports an inability to arrive at a verdict. *Id.*

There is no reasonable probability that this issue would have led to Movant prevailing on appeal, however, because the district court took steps to mitigate those concerns, and instructed the jury as follows:

> Members of the jury, pursuant to your request, the court reporter will now read the testimony of Brian Reams. Keep in mind that you should consider this testimony together with all of the other evidence in the case. Do not consider it by itself, out of context. Consider all the evidence together as a whole.

(D.E. 74 at 132). As stated above, the Court does not assume that the jury disregarded this instruction. "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694; *see also Richardson*, 481 U.S. at 206-07. Additionally, Brian Reams's testimony was read in its entirety, including cross-examination of the witness by trial counsel, Bruce R. Bentley. Because Movant does not show prejudice by demonstrating that he would have prevailed on appeal but for the alleged error, this claim fails.

### F. Failing to Seek the Return of $1,906.

Movant next claims his attorney "denied him effective assistance of counsel when he failed to move the Court to return the $1,906 taken from Petitioner's possession on June 1, 2005, upon the Court failing to enter an order forfeiting the money(s) seized." (D.E. 82 at 20). The relief Movant seeks here is not cognizable in a § 2255 motion. "Latin for 'you may have the body,' *habeas corpus* is a mechanism designed to relieve prisoners of unconstitutional confinement." *McGee v. United States*, No. 1:08-cv-499, 2010 WL 310770 at *2 (W.D. Mich. Jan. 21, 2010). Thus, "a § 2255 petition may not be used to challenge penalties merely collateral to imprisonment, such as fines and forfeiture of property." *Id.* (citing *United States v. Mays*, 67

18

F. App'x 868, 869 (6th Cir. 2003); *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995)). Movant's claim for relief under § 2255 that counsel was ineffective for not seeing to the return of the $1,906 he possessed when arrested is therefore without merit.

### III. CONCLUSION AND RECOMMENDATION

Having reviewed each of Movant's allegations of ineffective assistance of counsel and the record in detail, the Court concludes that Movant has failed to make the requisite showing in his § 2255 motion that would entitle him to relief. Therefore, the Court **RECOMMENDS** that Movant's motion to vacate his sentence (D.E. 82) be **DENIED**.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 10th day of January, 2010.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge