UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|     Plaintiff, | ) | Criminal Action No. 6: 05-58-DCR |
| | ) | Civil Action No. 6: 08-7023-DCR |
| V. | ) | |
| | ) | |
| GERALD WAYNE COLLIER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
|     Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of Defendant/Movant Gerald Wayne Collier's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 82] Consistent with local practice, the motion was referred to United States Magistrate Judge Hanly A. Ingram for consideration pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Ingram filed his Recommended Disposition on January 11, 2011. [Record No. 108] Based on his review of the record and the applicable law, the magistrate judge recommended that Collier's motion be denied. Collier filed objections to the magistrate judge's recommendation on February 17 and 24, 2011.[1] [Record Nos. 113, 114] Having reviewed all matters relevant to Collier's motion, the Court concludes that the Recommended Disposition should be adopted in full. Accordingly, Collier's motion will be denied.

---

1    Collier's initial objections to the magistrate's recommendation were filed on February 17, 2011. [Record No. 113] On February 24, Collier filed an addendum to those objections. [Record No. 114] Both filings have been considered by the Court. [*See* Record No. 110 (granting Collier's motion for an extension of time to object and ordering that his objections be filed by February 28, 2011)]

## I.

The facts relevant to Collier's conviction are outlined in the magistrate judge's Recommended Disposition and the Sixth Circuit's decision of Collier's direct appeal. On June 1, 2005, law enforcement officers were responding to an anonymous complaint of a methamphetamine manufacturing operation at the home of Collier's uncle when they encountered Collier, who fled immediately upon seeing police. Following a brief foot pursuit, Collier was apprehended and arrested. A search of Collier's person revealed two small bags of methamphetamine and approximately $1,900 in cash, but no drug-use paraphernalia. During a subsequent search of Collier's vehicle, Officer Brian Reams found a black box that contained a large amount of methamphetamine.

Collier was indicted on one count of possession with intent to distribute five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). He was tried before a jury in October 2005. Bruce Bentley was appointed as Collier's trial attorney pursuant to the Criminal Justice Act. [*See* Record No. 16]

During trial, the United States presented testimony by Officer Reams, Sergeant Eddie Sizemore, and Deputy Sheriffs Daryl Zanet, Albert Hale, and Brad Mitchell, all of whom were at the scene on the night of Collier's arrest. Beverly Wagoner, a drug analyst for the Kentucky State Police, and David Gray, an agent of the Drug Enforcement Agency, also testified for the prosecution. According to Wagoner, the black box recovered from Collier's vehicle contained 55.797 grams of 82 percent pure methamphetamine, or 45.757 grams of actual (pure)

methamphetamine. Wagoner further testified that the bags found in Collier's pocket held methamphetamine and dimethyl sulfone equivalent to 1.641 grams of pure methamphetamine.

Agent Gray was qualified by the Court as an opinion witness. He testified that the purity of the methamphetamine found in Collier's car, as well as the dimethyl sulfone — a "cutting agent" — accompanying the methamphetamine, suggested an intent to distribute. [Record No. 74, p. 14] Agent Gray further opined that the absence of any equipment for smoking or snorting methamphetamine was an indication that the drugs were not for personal use. Finally, he stated that the presence of $1,906 in cash was "another indication . . . that a person was selling methamphetamine and not using it." [*Id.*, p. 25]

Collier testified in his own defense. The Sixth Circuit summarized his testimony as follows:

> Defendant stated that he went to his uncle Glen Collier's house on June 1, 2005 to push a lawn mower into Glen Collier's barn for storage. Defendant admitted running from the police, and that the officers found money and drugs on his person, but said that those drugs were for personal use. Defendant denied ownership of the black box recovered from his car, and disclaimed all knowledge of the box. Defendant testified that the $1,900 was part of an inheritance from his father. Defendant denied distributing or selling methamphetamine that day.
>
> On cross-examination, Defendant asserted that he used dimethyl sulfone to stretch out his methamphetamine for personal use "because [he's] not rich." He testified that he planned to use the $1,900 in his pocket to pay bills that day because it was the first of the month. Defendant indicated that he began to run when the officers approached because he perceived the officer's Escalade to be an escalator. Later, Defendant stated it was because he had drugs in his pocket. Still later, Defendant explained, "Every time I see the police, I run." Lastly, Defendant admitted to a previous felony conviction for selling methamphetamine.

*United States v. Collier*, 246 F. App'x 321, 326-27 (6th Cir. 2007) (alteration in original) (citations omitted).

At the conclusion of a two-day trial, the jury returned a guilty verdict. [Record No. 42] Collier was sentenced to 480 months of imprisonment, followed by eight years of supervised release.[2] [Record No. 61] His sentence reflected a five-level career-offender enhancement pursuant to the sentencing guidelines. *See Collier*, 246 F. App'x at 331. Collier appealed his conviction and sentence to the Sixth Circuit Court of Appeals, which affirmed on all grounds.[3] *See id.* at 324. Thereafter, he filed the present motion, alleging ineffective assistance by his trial and appellate counsel.

## II.

The Court reviews de novo those portions of the Recommended Disposition to which Collier objects. *See* 28 U.S.C. § 636(b)(1)(C). The bulk of Collier's objections relate to his claims of ineffective assistance of counsel. [*See* Record No. 113, pp. 4-12] Such claims are evaluated using the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, the defendant must first establish "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. When evaluating an ineffectiveness claim, the Court "must indulge a strong presumption" that counsel rendered effective assistance. *Id.* at 689. The second prong of the *Strickland* inquiry is whether the defendant was prejudiced by his attorney's

---

[2] At Collier's request, Bentley withdrew as counsel prior to sentencing. [Record No. 49] The Court appointed Brandon Storm to represent Collier at sentencing. [*See* Record No. 51]

[3] A third attorney, Robert L. Vogel, was appointed to represent Collier on appeal. [*See* Record No. 70]

deficient performance. *Id.* at 687. To satisfy the prejudice requirement, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If either part of the *Strickland* test is not met, the Court's inquiry ends.[4] *Id.* at 697. Here, the magistrate judge correctly determined that Collier's ineffective-assistance claims fail the *Strickland* analysis.

### A. Collier's Decision to Testify

Collier asserts that his decision to testify at trial was the result of erroneous advice from his attorney. According to Collier, Bentley advised him that the United States could not question him regarding his prior felony conviction for selling methamphetamine but then "opened the door" for such questions by asking, on direct examination, where Collier had been in March of 2005 (when he was incarcerated for the prior conviction). [Record No. 82, p. 5; *see* Record No. 74, p. 40] On cross-examination, the Assistant U.S. Attorney elicited testimony regarding Collier's previous conviction. [*See* Record No. 74, p. 49]

At the outset, the Court rejects Collier's assertion that the magistrate judge "inappropriately accept[ed] counsel's affidavit over the sworn statements of Movant to the contrary." [Record No. 113, p. 5] In fact, Magistrate Judge Ingram expressly stated that he would *not* resolve any factual issue related to the advice Collier received about whether to testify. [Record No. 108, p. 7 n.2] Instead, he assumed, for purposes of analysis, that Collier

---

4    The Supreme Court has instructed that "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

would have chosen not to testify had he known that he would be subject to cross-examination regarding his prior conviction. [*Id.*, p. 7] The Court will assume likewise.

Even with the benefit of this assumption, however, Collier cannot demonstrate prejudice from defense counsel's allegedly erroneous advice. As the magistrate judge noted, there was "ample evidence" of Collier's guilt, including the large amounts of methamphetamine and cash found in his possession and the absence of any paraphernalia for using the drugs. [Record No. 108, p. 7] Further, the Court specifically instructed the jury that testimony regarding Collier's prior conviction should not be considered as evidence that he committed the crime for which he was on trial in this case.[5] [Record No. 74, p. 119] For purposes of the prejudice determination, "a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Here, Collier's challenge to the sufficiency of the evidence has already been rejected by the Sixth Circuit. *See Collier*, 246 F. App'x at 329-30. Thus, the Court can safely assume that the jury did not consider Collier's prior conviction as evidence of his guilt, and Collier cannot show that

---

5  The Court gave the following instruction, which was a modified version of Sixth Circuit Pattern Jury Instruction 7.13:

> You have heard testimony that the defendant committed some other acts — some acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crime that he is on trial for now. Instead, you can only consider it in determining his credibility as a witness. Do not consider it for any other purpose.
>
> Remember that the defendant is on trial here only for the crime of possession with the intent to distribute methamphetamine on or about June 1st, as charged in the indictment, and not for any other acts.

[Record No. 74, p. 119]

he was prejudiced by his attorney's allegedly erroneous advice regarding whether to testify. His first claim of ineffective assistance therefore fails. *See Strickland*, 466 U.S. at 694.

### B. Uncalled Witnesses

Next, Collier challenges the magistrate judge's conclusion regarding Bentley's alleged failure to subpoena certain witnesses. According to Collier, these witnesses — his mother and a BB&T bank employee — would have testified that the $1,906 found on Collier's person when he was arrested was from a legitimate source. [Record No. 113, pp. 6-7] As Magistrate Judge Ingram pointed out, however, it is not enough for Collier to simply say that the uncalled witnesses would have testified favorably in his behalf. [*See* Record No. 108, p. 9] Rather, to support his claim of ineffective assistance, Collier must "[a]t the very least . . . submit sworn affidavits from each of the individuals he has identified as uncalled witnesses stating whether they were in fact available to appear at trial and able to give testimony favorable to [his] defense." *Talley v. United States*, Nos. 1:00-cv-74/1:94-cr-118, 2006 U.S. Dist. LEXIS 86401, at *28 (E.D. Tenn. Nov. 27, 2006). Without such affidavits, Collier cannot show a reasonable probability that the outcome of his trial would have been different if counsel had called additional witnesses to testify. *See id.* at *27-28; *Strickland*, 466 U.S. at 694. Thus, his claim of ineffective assistance on this ground also fails.

### C. Lesser-Included-Offense Instruction

In Collier's third ineffective-assistance claim, he asserts that Bentley erroneously advised him that he would be subject to the career-offender sentencing enhancement even if he were convicted of simple possession. [Record No. 113, p. 9] Collier maintains that, as a result of this

alleged error, he withdrew his request for a jury instruction on a lesser included offense — a decision that, he acknowledged at trial, was made *against* the advice of his counsel. [*Id.*; *see* Record No. 74, pp. 72-73] According to Collier, the magistrate judge misinterpreted his argument on this issue and neglected to consider *why* he chose not to ask for the lesser-included-offense instruction. [Record No. 113, p. 9]

Nowhere, however, does Collier show that he was prejudiced by his counsel's allegedly erroneous advice. He simply states that if he had understood the law correctly, he would have requested an instruction on the lesser included offense and thus would have received a shorter sentence *if* the jury had found him guilty of simple possession. [*See* Record No. 82, p. 12] But he offers no reason why the jury, if given the option, would have convicted him of the lesser offense, nor does he even contend that such a result would have been likely. Moreover, as the Sixth Circuit observed on his direct appeal, the evidence of Collier's intent to distribute methamphetamine was "overwhelming." *Collier*, 246 F. App'x at 329. In short, Collier has demonstrated no reasonable probability that the outcome of his case would have been different if the jury had been instructed on the lesser included offense. Accordingly, his claim of ineffective assistance on this ground also fails the *Strickland* test. *See* 466 U.S. at 694, 697.

**D.     Motion to Suppress**

Collier next argues that his trial counsel should have filed a motion to suppress evidence taken from the floorboard of Collier's vehicle, namely, the black box containing methamphetamine. Although an attorney's failure to file a timely motion to suppress may constitute ineffective assistance, "failure to file a suppression motion is not ineffective assistance

*per se.*" *United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986)). Rather, the Court must determine whether such a motion would have been successful. *Id.* (citing *Worthington v. United States*, 726 F.2d 1089, 1093-94 (6th Cir. 1984)). Counsel cannot be deemed ineffective for not having filed a futile motion. *See id.*; *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999) ("[T]here can be no constitutional deficiency in . . . counsel's failure to raise meritless issues.").

Here, as the magistrate judge explained, a motion to suppress would not have succeeded because the search of Collier's vehicle was permissible under the automobile exception to the warrant requirement. That exception "allows a warrantless search of an automobile if officers have probable cause to believe the vehicle contains evidence of a crime." *United States v. Galaviz*, No. 07-2518, 2011 U.S. App. LEXIS 9441, at *20-21 (6th Cir. May 6, 2011) (citing *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Graham*, 275 F.3d 490, 509 (6th Cir. 2001) (internal quotation marks omitted). In other words, a law enforcement officer may search a vehicle pursuant to the automobile exception if he has reasonable grounds to believe that the vehicle contains "instrumentalities or evidence of crime." *Id.*

Collier contends that there could not have been probable cause to search his vehicle in this case because Officer Reams, who conducted the search, testified at trial that he did not know the amount of methamphetamine found on Collier's person. [Record No. 114, p. 2 (citing Record No. 73, p. 47)] However, the fact that Reams was not the officer who found drugs in

Collier's pocket does not mean he was unaware that the drugs had been found. Reams' testimony was clear that he searched the vehicle only after Collier had been apprehended, by which time the police had already removed a large sum of money and what appeared to be drugs from Collier's pocket. [*See* Record No. 73, p. 32 (vehicle search took place "[a]fter the foot pursuit ended"); *id.*, p. 60 (Deputy Zanet, who apprehended Collier, found "a large wad of money" and two plastic baggies containing "a white crystal substance" in Collier's pants pocket); *id.*, p. 62 (Deputy Zanet immediately suspected white crystal substance to be methamphetamine)] Moreover, Collier had fled "as soon as eye contact was made" with Reams. [*Id.*, p. 29] Law enforcement had been called to the location to investigate drug activity. [*Id.*, p. 41] This combination of circumstances was undoubtedly sufficient to raise "reasonable grounds for belief" that the vehicle contained evidence of a crime. *Graham*, 275 F.3d at 509. Therefore, a motion to suppress would have been denied, and Collier's counsel did not err in not filing one. *See Thomas*, 38 F. App'x at 201; *Mapes*, 171 F.3d at 413.

### E. Re-reading of Trial Testimony

In his last claim of ineffective assistance, Collier argues that his appellate counsel should have challenged the Court's decision to grant the jury's request for a rereading of Brian Reams' trial testimony. Collier cites *United States v. Tines*, 70 F.3d 891 (6th Cir. 1995), in support of this contention. [Record No. 113, p. 12] The Sixth Circuit noted in *Tines* that whether to allow a jury to hear trial testimony a second time is within the trial court's discretion, and "[t]his discretion encompasses a trial court's decision to allow a re-reading of one witness'[s] entire testimony." 70 F.3d at 897 (citing *United States v. Epley*, 52 F.3d 571, 579 (6th Cir. 1995)).

The court noted "two dangers" that could arise when testimony is re-read to the jury: "(1) that the jury may unduly emphasize the testimony, and (2) that the jury may take the reviewed testimony out of context." *Id.* (citing *Epley*, 52 F.3d at 579; *United States v. Padin*, 787 F.2d 1071, 1076 (6th Cir. 1986)). In *Tines*, however, the trial court had taken sufficient precautions to avoid these dangers: the witness's entire testimony was reread, and the court gave a cautionary instruction both before and after the re-reading. *See id.* at 897-98.

Likewise, in this case, the Court twice directed the jury to "consider [the re-read] testimony together with all of the other evidence in the case. Do not consider it by itself, out of context. Consider all the evidence together as a whole."[6] [Record No. 74, p. 132; *see also id.*, p. 159 (virtually identical instruction given after testimony was reread)] As explained previously, the Court presumes that its instructions were followed. *See Strickland*, 466 U.S. at 694. Thus, "any danger that the jury would unduly emphasize [Reams's] testimony" or consider it out of context was averted. *Tines*, 70 F.3d at 898; *see id.* at 897.

Moreover, Reams's testimony was re-read in its entirety so as to avoid drawing attention to any particular statement. [Record No. 108, p. 18; *see* Record No. 74, pp. 132-58] The Court's procedure was therefore entirely consistent with Sixth Circuit law. *See Tines*, 70 F.3d at 897-98. Accordingly, Collier cannot demonstrate that he suffered any prejudice as a result of his appellate counsel's failure to raise this issue on direct appeal, and his final claim of ineffective assistance is unavailing.

---

6 The Court's instruction tracked the language of Sixth Circuit Pattern Jury Instruction 9.02.

### F. Evidentiary Hearing

Finally, Collier objects to the magistrate judge's failure to recommend an evidentiary hearing. A hearing is unnecessary under § 2255 if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As outlined above, it is clear from the record that Collier's claims lack merit. Consequently, no evidentiary hearing is required in this matter.

### III.

In summary, Collier has shown no prejudice from his counsel's allegedly deficient performance, and his claims of ineffective assistance therefore fail. Because Collier has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will issue. Accordingly, it is hereby

**ORDERED** as follows:

(1) Defendant/Movant Gerald Wayne Collier's motion to vacate, set aside, or correct his sentence [Record No. 82] is **DENIED**.

(2) The Recommended Disposition of United States Magistrate Judge Hanly A. Ingram [Record No. 108] is **ADOPTED** and **INCORPORATED** herein by reference.

(3) Collier's objections [Record Nos. 113, 114] to the Recommended Disposition are **OVERRULED**.

(4) This habeas proceeding shall be **DISMISSED** and **STRICKEN** from the docket.

This 17th day of May, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge